IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
CIVIL DIVISION

| | |
|---|---|
| DR. RICHARD GROSS<br>700 Painter Court<br>Capital Heights, Maryland 20743<br><br>EDWARD MORGAN<br>as the Personal Representative<br>of the Estate of JOHN MORGAN<br>9545 Kilimanjaro Road<br>Columbia, Maryland 21015<br><br>MARVIS OLFUS<br>ERIC OLFUS, Jr.<br>as the Personal Representatives<br>of the Estate of ERIC OLFUS<br>7820 Glenarden Parkway<br>Glenarden, Maryland 20706<br><br>   *Plaintiffs*,<br>  v.<br><br>SANCTUARY RECORDS GROUP<br>825 Eight Ave, 29th Floor<br>New York, New York 10019<br><br>UMG RECORDINGS, INC.<br>1755 Broadway<br>New York, NY 10019<br><br>  Serve on:<br>  CT Corporation Systems<br>  111 Eighth Avenue<br>  New York, NY 10011<br><br>   *Defendants*. | JUDGE MARRERO<br><br>12 CV 2273<br><br>Complaint<br>Case No. _____<br> |

**COMPLAINT**

  Plaintiffs, by and through their undersigned counsel, complaining of the Defendants, allege:

  1.  This action by Plaintiffs each individually, as more fully set forth herein is

1

for restitution to prevent unjust enrichment, accounting for profits, and misappropriation of name and likeness against Sanctuary Records Group and Universal Music Group, Inc.

## JURISDICTION & VENUE

2.  Because the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, and this action is between citizens of different states, this court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a). This court has subject matter jurisdiction over the claims that arise under state of New York pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. §1367(a).

## PARTIES & RELEVANT ACTORS

3.  Mark Greene is a resident of the District of Columbia (herein "Plaintiff Greene") and was an original member of the performing group professional known as The Moments.

4.  Richard Gross is a resident of the State of Maryland (herein "Plaintiff Gross") and was an original member of the performing group professionally known as The Moments.

5.  Eric Olfus is deceased (herein "Olfus") and was an original member of the performing group professionally known as The Moments.

6.  Marvis Olfus and Eric Olfus, Jr. are representatives of the Estate of Eric Olfus (herein "Plaintiff Olfus").

7.  John Morgan is deceased (herein "Morgan") and was an original member of the performing group professionally known as The Moments.

8.  Edward Morgan (herein "Plaintiff Morgan") is the representative of the Estate of John Morgan.

9. Based upon information and belief, Sylvia Robinson and her husband, Joseph Robinson (both deceased) (the "Robinsons") were the sole owners of All Platinum Record Company, a New Jersey company. ("All Platinum Records").

10. Rhino Entertainment Company, based upon information and belief is a California corporation and a distributor of "oldies but goodies" records (herein "Rhino").

12. Warner Music Group, Inc. is a Delaware corporation with its principal place of business located in California (herein "Warner Music Group"). Based upon information and belief Defendant Rhino was purchased by Warner Strategic Marketing a division of the Warner Music Group.

13. Based upon information and belief, Sanctuary Records Group is a company formed under the laws of England and has a principal place of business in the United States in New York, New York (herein "Defendant Sanctuary Records").

14. Based upon information and belief, UMG Recordings, Inc. is a California Corporation with a place of business in the state of New York. (Defendant "UMG").

15. Based upon information and belief, Defendant UMG purchased Sanctuary Records in August 2007, and Defendant UMG is currently the distributor of the Original Moments Masters in connection with Foreign Rights, as defined below.

### FACTS COMMON TO ALL CLAIMS
### "THE MOMENTS"

14. Beginning in 1967, Plaintiffs were performing and recording under the professional name "The Moments."

15. In or about 1967, Plaintiffs traveled from Washington, DC to the home of Ed Towns in Teaneck, New Jersey where they were introduced to Defendant Sylvia

3

Robinson and her husband Joseph Robinson, the owners of Defendant All Platinum Records. (Ed Towns was famous for his rendition of the song "*Keep on Walkin'*")

16. Plaintiffs auditioned for Defendants All Platinum Records, Sylvia Robinson and Joseph Robinson. Based on the audition, All Platinum Records decided that they were interested in having Plaintiffs as artists for the All Platinum Records' "Stang" label.

17. Subsequent to the audition, Plaintiffs traveled back and forth from Washington, DC to New Jersey meeting with Defendant All Platinum Records several times.

18. At one such meeting, Plaintiffs were presented with a document that appeared to be a contract and were instructed by Defendant Robinson and her husband to sign the document. Immediately after the document was signed by Plaintiffs, it was taken away by Defendant Robinson and her husband.

19. The Plaintiffs were never given a copy of the document that was signed and have never again seen that document.

20. Thereafter, in or about October 1968, the Plaintiffs recorded "*Not On the Outside*" and a second master entitled "*Understanding*" for a so-called "B-Side" of the "*Not On The Outside*" single record, at All Platinum Records' studios in New Jersey.

21. The master recording "*Not On The Outside*" (herein *the "Not On The Outside Master"*) was commercially released by Defendant All Platinum Records as a 45 rpm single record with the "Stang" label.

22. The Plaintiffs traveled around the country performing "*Not On The Outside*" on television, radio and in live performances to promote the sale of the "Not On

The Outside Master." The Robinsons also acted as the Plaintiffs' managers during this time period.

23. The "Not On The Outside Master" did very well at radio and in the first year of its initial commercial release and sold at least 250,000 units.

24. On or about January 1969, the Plaintiffs were in New York performing at the Apollo. Dissatisfied with the compensation they were receiving for the Apollo performance and having not received any royalties, Plaintiffs began complaining to the Robinsons that they should be paid more money.

25. The Robinsons were very upset that the Plaintiffs were inquiring about royalties owed them as well as their compensation for their live performance at the Apollo.

26. Shortly thereafter on or about March 1969, Defendants All Platinum Records requested that Plaintiffs come to New Jersey to record additional songs.

27. While Plaintiffs Gross and Olfus and Mark Greene were in New Jersey recording they became aware, much to their shock and surprise, that the Robinsons had enlisted the services of Albert "Al" Goodman and William "Billy" Brown along with Plaintiff Morgan to perform "*Not On The Outside*" at the Baltimore Civic Center.

28. Shortly thereafter, without just reason or cause, the Robinsons replaced Plaintiffs Gross and Olfus and Mark Greene with one, William "Billy" Brown, and one, Al Goodman.

29. The Moments then became a three member group comprised of Plaintiff Morgan, along with William "Billy" Brown and Al Goodman.

30. Plaintiff Morgan along with Albert Goodman and William Brown

5

recorded additional master recordings as "*The Moments*" including *"Love On A Two Way Street,"* "*Sunday*," "*Lovely Way She Loves,"* and "*I Do*" (herein collectively the "Morgan Masters").

31. In or about January of 1970, Plaintiff Morgan was replaced with John Moore, the brother-in-law of Defendant Robinson. Moore was soon thereafter replaced by Harry Ray.

### THE SUGAR HILL BANKRUPTCY

32. Based upon information and belief, Defendant Sylvia Robinson and her husband Joseph Robinson formed a new record company called Sugar Hill Records in or about 1977.

33. On or about November 28, 1985, Defendant Robinson and her husband filed for protection under Chapter 11 of the Bankruptcy Laws in the United States Bankruptcy Court for the District of New Jersey for Sugar Hill Records.

34. None of the Plaintiffs ever received any notice from Defendants All Platinum Records in connection with the 1985 Sugar Hill Bankruptcy filing.

35. Plaintiffs Gross, Morgan and Olfus had no knowledge that Defendant All Platinum Records had filed for Bankruptcy protection.

### SALE OF ALL PLATINUM BY THE ROBINSONS

36. All Platinum Records and the Robinsons entered into an asset purchase agreement in New York with Rhino Records, Inc. and Castle Copyrights, Ltd. ("Castle") dated May 31, 1995 to sell the All Platinum Records' assets to Rhino and Castle (the "Asset Purchase Agreement") with the intention that Rhino would commercially exploit

6

the Original Moments Masters along with certain other masters recorded by Ray, Goodman and Brown.

37. The Asset Purchase Agreement provided *inter alia* that Rhino and Castle were to purchase the assets of All Platinum Records including the Original Moments Masters and assume all obligations of All Platinum Records including, the obligation for payment of royalties to all artists due royalties under artist agreements with All Platinum Records.

38. Based upon information and belief under the terms of the Asset Purchase Agreement Castle acquired the right to exploit the Original Moments Masters around the world excluding North America, South America, the Caribbean and Japan (herein the "Foreign Rights") and Rhino would have the right to exploit the Original Moments Masters in North America, South America, the Caribbean and Japan (herein the "American Rights").

39. Based upon information and belief, Castle subsequently transferred and/or assigned its Foreign Rights to Defendant Sanctuary Records.

40. Based upon information and belief during 2000, Rhino Records was sold to Warner Strategic Marketing a subsidiary company of the Warner Music Group, Inc.

41. Based upon information and belief on or about August 2007, Sanctuary was purchased by Defendant UMG.

42. Plaintiffs have never received any royalties or other compensation for the commercial exploitation of Original Moments Masters by All Platinum Records nor Defendants Sanctuary and/or UMG.

43. The purpose for Plaintiffs entering into an agreement with All Platinum

Records has been completely frustrated due to them not receiving any compensation for the commercial exploitation of Original Moments Masters.

44. In or about 2010, the Original Moments Master entitled "Love On A Two Way Street" was sampled on the new master recordings *entitled "Empire State of Mind"* as recorded by Jay Z and *"Empire State of Mind"* as recorded by Alicia Keys (herein the "Empire State of Mind Masters") and, based upon information and belief, has sold over 3 million records in the Foreign Rights Territories (the "Empire State of Mind Masters").

45. In addition, the Empire State of Mind Masters have been used in synchronization in connection with the block buster motion pictures such as "Sex In The City" and in synchronization with many television programs, television commercials.

## COUNT ONE
## ACTION FOR RESTITUTION
## AGAINST DEFENDANTS
## RHINO AND WARNER MUSIC GROUP

46. Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "45" as if originally pleaded herein.

47. Plaintiffs are entitled to restitution from Defendants Sanctuary and UMG for Sanctuary's and UMG's use and exploitation of the Original Moments Masters and the Plaintiff names, voices and likeness without right or authority and without compensation to Plaintiffs from the date of acquisition of the rights from All Platinum Record Company to the date hereof. Defendants Sanctuary and UMG will be unjustly enriched if they are allowed to continue to reap the profits from the Original Moments Masters without compensation to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

A. Award Plaintiffs restitution in the amount of $1,000,000 or such other

amount as this court deems just and proper from Defendants Sanctuary and UMG, jointly and severally.

B.   And such other relief as this Court deems just and proper.

## COUNT TWO
## ACTION FOR RECESSION
## AGAINST DEFENDANTS
## SANCTUARY AND UMG

48.   Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "47 as if originally pleaded herein.

49.   Plaintiffs are entitled to recession against Defendants Sanctuary and UMG as neither All Platinum Records, Sanctuary nor UMG have ever paid Plaintiffs a royalty in connection with their exploitation of the Original Moments Masters or use of the Plaintiffs' names, voices and likeness from the date of recording such masters.

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

A.   Rescind the All Platinum Agreement among Plaintiffs, All Platinum Records, Sanctuary and/or UMG and award Plaintiffs ownership of the copyrights in the Original Moments Masters, or part thereof, as applicable.

B.   And such other relief as this Court deems just and proper.

## COUNT THREE
## ACTION FOR BREACH OF CONTRACT
## AGAINST DEFENDANTS
## SANCTURAY AND UMG

50.   Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "49" as if originally pleaded herein.

51.   Alternatively, Plaintiffs are entitled to an accounting of royalties due from Defendants Sanctuary and UMG as recording artists whose vocal performances are

featured on the Original Moments Masters.

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

A. Award Plaintiffs a royalty for Defendants Sanctuary's and UMG's commercial exploitation of the Original Moments Masters in connection with the Foreign Rights against Defendants Sanctuary and UMG jointly and severally.

B. And such other relief as this Court deems just and proper.

### JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL LEGAL ISSUES RAISED HEREIN REGARDING LIABILITY OF THE DEFENDANTS.

DATED: February 15, 2012

Respectfully submitted,

*[signature]*

Lita Rosario, Esq.
1100 H Street, N.W., Suite 315
Washington, D.C. 20005
202-628-4759
lita.rosario@wyzgirl.com